Theresa M. House (*pro hac vice* forthcoming)
Theresa.House@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
Telephone: (212) 836-8094
Facsimile: (212) 836-8689

James S. Blackburn (Bar No. 169134)
James.Blackburn@arnoldporter.com
Oscar Ramallo (Bar No. 241487)
Oscar.Ramallo@arnoldporter.com
Sage R. Bitter (Bar No. 357972)
Sage.Bitter@arnoldporter.com
ARNOLD & PORTER KAYE SCHOLER LLP
777 South Figueroa Street, 44th Floor
Los Angeles, CA 90017-5844
Telephone: (213) 243-4290
Facsimile: (213) 243-4199

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

ITV STUDIOS LTD., a United Kingdom private limited company, and ITV AMERICA INC., a Delaware corporation,

Plaintiffs,

v.

NELK USA, INC., a Delaware corporation; NELK, INC., a Canadian corporation; FULL SEND CORPORATION, a Delaware corporation; SHOTS STUDIOS, INC., a Delaware corporation; HAPPY DAD LLC, a Delaware limited liability company; and KYLE FORGEARD, an individual,

Defendants.

**Case No. 8:26-CV-03219**

**COMPLAINT FOR:**

**(1) FEDERAL TRADEMARK INFRINGEMENT**

**(2) FEDERAL UNFAIR COMPETITION**

**(3) FEDERAL DILUTION**

**(4) DILUTION UNDER CALIFORNIA LAW**

**DEMAND FOR JURY TRIAL**

Plaintiffs ITV Studios Limited ("ITV Studios") and ITV America Inc. ("ITVA," and together with ITV Studios, "ITV" or "Plaintiffs"), by and through their undersigned counsel, bring this action against Defendants NELK USA, Inc., Nelk, Inc., Full Send Corporation, Shots Studios, Inc., Happy Dad LLC, and Kyle Forgeard (collectively, "Defendants" or "Nelk Parties") for injunctive relief and damages, and allege as follows:

## NATURE OF THE ACTION

1. This is a case about trademark infringement and brand theft. ITV owns and operates *Love Island*, one of the most popular and valuable reality television franchises in the world, and the brands or trademarks that identify it. The Nelk Parties, a group of intentionally provocative social media personalities and companies, saw an opportunity to steal that brand for their own personal enrichment and did so, leading to the instant action.

2. Seeking to capitalize on the fame and popularity of *Love Island*, to boost their own commercial relevance, and to increase sales of a range of consumer products promoted through their internet channels, the Nelk Parties created a blatant copy of *Love Island*. They even called it "*Love Island*." They used the *Love Island* logo and marks, the show's signature catchphrases, and its distinctive look and feel, down to copying its settings and plotlines and hiring a former *Love Island USA* contestant to appear on their copycat show. The result falsely associates the Nelk Parties with ITV and infringes the *Love Island* marks.

3. The Nelk Parties did this solely for commercial gain. They wanted to profit from false association with a hugely popular franchise by using that association to generate attention for their knockoff show and then leveraging that attention into advertising revenue and sales of their own merchandise and their partners' products.

4. The scheme worked. Episode 1 of the knockoff drew more than 5 million YouTube views. Viewers openly expressed confusion about whether ITV

was connected to the program, and some blamed the real *Love Island* for the knockoff's crude and offensive content. The Nelk Parties have generated substantial revenues from this unlawful conduct and continue to profit from it.

5. Their behavior was and is knowing, intentional, and willful. When ITV confronted the Nelk Parties about their conduct, they never denied it. Instead, they doubled down and tried to prolong their ability to profit from the infringement by releasing additional episodes with an alternate name: "Nelk Presents: No Love in Miami." The fig-leaf name change does not repair the damage they caused. The Nelk Parties continue to promote the renamed program—both overtly and through social media platforms' recommendation algorithms, which promote new content connected to the original and thereby extend its reach and engagement—as a continuation of their earlier "*Love Island*" program, in an effort to keep profiting from the association that consumers formed between the real *Love Island* and its rip-off.

6. ITV brings this action to protect the *Love Island* brand and the viewers who rely on it, and to hold the Nelk Parties accountable for their theft of ITV's brands and associated goodwill.

## **THE PARTIES**

7. Plaintiff ITV Studios is a private limited company incorporated in the United Kingdom with its registered office in London, England. ITV Studios is one of the world's leading media and entertainment companies and the United Kingdom's largest production company, operating in 13 countries across over sixty labels, with a library of over 100,000 hours of content. ITV Studios owns the federally registered, pending, and common-law LOVE ISLAND trademarks identified in this Complaint.

8. Plaintiff ITVA is a Delaware corporation with its principal place of business at 5250 Lankershim Blvd., North Hollywood, CA 91601. ITVA is one of the largest independent non-scripted producers in the United States. ITVA produces

*Love Island USA* and, together with its affiliate, licenses *Love Island USA* to NBCUniversal for streaming on Peacock.

9. Defendant NELK USA, Inc. ("NELK USA") is a Delaware corporation that conducts business in California and Florida. NELK USA is a wholly owned subsidiary of Nelk, Inc.

10. Defendant Nelk, Inc. is a Canadian corporation with its principal place of business in Calgary, Alberta.

11. Defendant Full Send Corporation ("Full Send") is a Delaware corporation with its principal place of business in Irvine, California.

12. Defendant Shots Studios, Inc., d/b/a "Shots Podcast Network" and "Shots" ("Shots Studios"), is a Delaware corporation with its principal place of business in Los Angeles, California.

13. Defendant Happy Dad LLC ("Happy Dad") is a Delaware limited liability company with its principal place of business in Mission Viejo, California.

14. Defendant Kyle Forgeard ("Forgeard") is an individual who resides in Florida and conducts business from Full Send's principal office in Irvine, California.

## JURISDICTION AND VENUE

15. The Court has original subject matter jurisdiction over ITV's Lanham Act claims under 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121. The Court has supplemental jurisdiction over ITV's state law claim under 28 U.S.C. § 1367(a).

16. The Court has general personal jurisdiction over, at least, Defendants Full Send, Happy Dad, and Shots Studios because they have principal places of business in California.

17. The Court has specific personal jurisdiction over each Defendant because they purposefully directed infringing ads and the infringing *Love Island* knockoff program to the California market and used ITV Studios' trademarks to sell products to the California market. Accordingly, the Defendants' course of

conduct appealed to and profited from the California audience and harmed ITV in California. The role of each Defendant is detailed in Section I of the Factual Allegations, *infra*.

18. Venue is proper in this District under 28 U.S.C. §§ 1391(b)(2), 1391(c)(2), 1391(c)(3), and 1391(d) because a substantial part of the events or omissions giving rise to ITV's claims occurred in this District and because Defendants reside in, are subject to personal jurisdiction in, or may be found in this District.

## FACTUAL ALLEGATIONS

### A. *Love Island* is famous.

19. *Love Island* is a world-famous reality television show. In the show, a group of single contestants, known as "Islanders," live together in an isolated "Villa." Islanders form couples to avoid elimination. Throughout the season, the show introduces new Islanders, "Bombshells," who can break up existing couples, placing un-coupled Islanders at risk of elimination. A public vote at the end of the season determines the winning couple, who split a cash prize.

20. *Love Island* premiered in the United Kingdom in 2015 and, under the name *Love Island USA*, in the United States in 2019. A total of 31 different licensed versions and spin-offs have aired in dozens of countries around the world. Each version combines the *Love Island* mark with another word to describe the nature of the variation, e.g., *Love Island USA* for American audiences and *Love Island UK* for British audiences (in addition to localized versions in Australia; South Africa; Adria, covering Bosnia and Herzegovina, Croatia, Montenegro, North Macedonia, Serbia, and Slovenia; and elsewhere), as well as *Love Island Games* focusing on competitions; a celebrity edition called *Love Island VIP*; *Love Island: All Stars* composed of former cast members; and *Love Island: Beyond the Villa*, following former cast members into new locations.

21. *Love Island* has been a resounding success in the United States. *Love*

*Island USA* Season 7, which aired in 2025, generated 18.4 billion minutes streamed on Peacock, making it Peacock's most-watched original season of all time. It was the No. 1 streamed original television program for adults under 35 in the United States during its run. On TikTok alone, the affiliated *Love Island* accounts and #LoveIslandUSA reached more than 1.7 billion video views and impressions. Season 8, which premiered on June 2, 2026, was even more successful, shattering Season 7's records and ranking as Nielsen's No. 1 most-watched streaming series of summer 2026 in addition to being the No. 1 streaming reality title for six consecutive weeks (the entirety of its season). About 30% of total viewership came from mobile devices, setting a record for the largest mobile viewing share of any Peacock original series launch, and the season generated more than 5 billion video views across platforms.

22. The most prominent media outlets in the United States recognize *Love Island* as a cultural phenomenon. For example, a May 26, 2026, *Wall Street Journal* article describes how the *Love Island* voting app at one point became the most popular app on the Apple App Store, surpassing ChatGPT, with 36 million downloads. The same article reports that a *Love Island* mobile game at its peak sold 80 virtual outfits *per minute*. A June 27, 2025, *Washington Post* article describes the show as a "reality hit" that "has not only taken over our timelines, our group chats and our lives, it's now taking over the city's bars."

23. *Love Island* has also won industry recognition. For example, in 2026, the host of *Love Island USA* was nominated for an Emmy Award for Outstanding Host for a Reality or Reality Competition Program. *Love Island* has also won awards from the British Academy of Film and Television Arts and the MTV Movie & TV Awards, including Best International Reality Series.

24. *Love Island* features several commonly repeated catchphrases that members of the public closely associate with *Love Island*, including:

- **HOT NEW BOMBSHELL.** Islanders who are not coupled with

another Islander face the greatest risk of elimination. A "Bombshell" is a new contestant introduced partway through the season to disrupt existing couples. The show's hosts and narrators announce the Bombshell's arrival with "Hot new bombshell," and fans of the show use the phrase to discuss new Islanders.

- **A NEW BOMBSHELL ENTERS THE VILLA.** The show uses the announcement "a new bombshell enters the villa" to signal the Bombshell's imminent arrival and introduce the new contestant.
- **I'VE GOT A TEXT.** This catchphrase is shouted when a contestant's phone buzzes with a message from producers. The producers' text typically announces a new twist in the show, including a "recoupling," a Bombshell's arrival, or an imminent elimination.
- **PULL YOU FOR A CHAT.** Islanders use this catchphrase to pull other Islanders aside for a one-on-one conversation about romantic interest, tension, or strategy.

25. These catchphrases have entered the lexicon of a large part of the general public as terms associated with *Love Island*. For example, a June 22, 2026, article in *Forbes* about the screening of *Love Island* in movie theaters begins, "The entertainment industry got a text: Theatrical screenings are the hot new bombshell hitting the silver screen as *Love Island USA* mimics *The Boys* and *Stranger Things* releases."

26. *Love Island* is also a globally recognized brand for merchandising. In addition to ITV Studios directly selling merchandise, ITV Studios has partnered with leading consumer companies, including Maybelline New York, CeraVe, Jose Cuervo, Motorola, Mars Candy (M&M's), Spotify, Instacart, Tinder, Coffee-mate, and Pepsi. These already famous brands pay substantial fees to associate with *Love Island*. *Love Island USA* Season 8 alone drew more than 1,000 authorized media partners. Content associated with just one brand partner resulted in more than 33

million impressions on brand-owned social channels and more than 212 million views for associated creator content.

27. ITV heavily promotes *Love Island* in California, one of its most important markets. Its reputation is particularly important in California, which is at the center of the global entertainment industry and home to more people who influence industry awards and recognition than any other place on the planet. Thus, for example, ITV promoted *Love Island* through theatrical screenings in Los Angeles and Orange Counties, a Season 8 reunion show with a live studio audience hosted at Universal Studios Hollywood, a pop-up in the Westfield Century City Mall, four *Love Island USA*-themed public bus stop shelters in West Hollywood, and a spin-off show titled *Love Island: Beyond the Villa* that follows cast members around Los Angeles and is promoted with the tagline "A Bombshell Has Entered Los Angeles."

28. As a worldwide cultural phenomenon, *Love Island* has achieved fame throughout California and the United States.

**B. The *Love Island* trademark registrations and applications.**

29. ITV Studios is the owner of numerous federal trademark registrations (indicated by registration number) and applications (indicated by serial number) for the word marks:

- LOVE ISLAND[1]
- I'VE GOT A TEXT[2]

---

[1] Reg. No. 6166959 (for goods and services that include reality dating television programs; reality dating program podcasts; clothing; and online gambling services); Reg. No. 6505302 (for goods and services that include online retail store services featuring clothing and other goods and enabling customers to view and purchase the goods through websites, interactive television, and mobile devices); Reg. No. 7973312 (for goods and services that include meat products; alcoholic beverages; and online social networking and dating services).

[2] Reg. No. 8340563 (for goods and services that include reality dating television programs; reality dating program podcasts; and gambling services and downloadable application software for gambling).

- HOT NEW BOMBSHELL[3]
- A NEW BOMBSHELL ENTERS THE VILLA[4]
- PULL YOU FOR A CHAT[5]

30. ITV Studios also owns federal trademark registrations for the following graphic marks:




Reg. No. 5816835[6]




Reg. No. 8218161[7]




Reg. No. 7583853[8]

---

[3] Ser. No. 99610083 (for goods and services that include reality dating television programs; reality dating program podcasts; clothing; and online retail store services featuring clothing, hard seltzer, and other goods).

[4] Ser. No. 99610078 (for goods and services that include reality dating television programs; reality dating program podcasts; clothing; online retail store services featuring clothing, hard seltzer, and other goods; and gambling services and online gambling websites).

[5] Ser. No. 99823297 (for goods and services that include reality dating television programs; reality dating program podcasts; clothing; online retail store services featuring clothing, hard seltzer, and other goods; and gambling services).

[6] For services that include reality dating television programs and their production and presentation.

[7] For goods and services that include reality dating television programs; reality dating program podcasts; clothing; online retail store services featuring clothing and other goods; and gambling services and online gambling software.

[8] For goods and services that include reality dating television programs; reality dating program podcasts; clothing; online retail store services featuring clothing and other goods; internet streaming and podcasting services; and gambling services.

31. ITV Studios also owns a federal trademark application for the following stylized logo[9]:

love island

32. In general, the applications and registrations cover reality dating programs, merchandise, and other goods and services.

**C. The Nelk Parties' commercial enterprise.**

33. The Nelk Parties are a commercial enterprise that generates tens of millions of dollars per year in revenue by selling and promoting merchandise through their social media channels.

34. NELK was founded in or around 2010 by Forgeard and others as a YouTube channel. The personalities who appear on the channel are known as the NELK Boys. The NELK Boys are known for courting viewer attention by filming themselves performing crude, illegal, and dangerous pranks and other controversial, often offensive conduct.

35. For example, one of the NELK Boys was found guilty of disorderly conduct after he was filmed walking into a bookstore while smeared with fake blood and asking for a book on how to cover up a crime scene, causing a panic. In a different prank video invoking a racist stereotype, a NELK Boy dressed up as a UPS driver and delivered puppies to Asian restaurants.

36. NELK has grown from a single YouTube channel to a constellation of social media accounts with a large following. The main NELK YouTube channel (@nelkfilmz) has more than 8.4 million subscribers. Forgeard and other NELK

[9] Ser. No. 99610060 (for goods and services that include reality dating television programs; reality dating program podcasts; clothing; meat snack foods; hard seltzer; online retail store services featuring clothing, hard seltzer, and other goods; and gambling services and online gambling websites).

Boys host the Full Send Podcast, which has more than 2 million subscribers on YouTube (@FULLSENDPODCAST). NELK-affiliated accounts have more than 21 million followers across YouTube, Instagram, TikTok, Snapchat, and X.

37. These social media accounts often advance misogynistic content. For example, the Full Send Podcast conducted a friendly interview with "manosphere" figure Andrew Tate, who is currently facing an extradition request from the United Kingdom on charges of rape, human trafficking, indecent images of a child, and assault.[10] During the interview, Tate argued that "beautiful women love misogynistic men" and that "the only women who don't love misogynists are the women who are too ugly to get fucked by a misogynist."[11]

38. According to reporting from *The New York Times*, YouTube demonetized the NELK channel in 2020 for having dangerous and illegal content. After demonetization on YouTube, NELK shifted to using its social media platforms to promote sponsored products and to sell NELK merchandise to its viewers. Thus, the Nelk Parties' social media accounts collectively function as an integrated enterprise to translate viewer interest in NELK programming into purchases of products from NELK-owned or affiliated companies, including Happy Dad and Full Send, and to generate sales for their sponsors' products.

**D. Defendants announce an infringing *Love Island* program.**

39. In February 2026, Defendants posted a casting call on the internet for "Nelk Love Island." The casting call described the show as "[f]ollowing the Love Island format," including "bombshells" that "enter throughout the show to shake up relationships."

40. On or about February 25, 2026, Defendants began teasing clips of the

[10] https://www.cps.gov.uk/national-news/news/cps-decides-prosecute-tate-brothers-additional-sexual-offences.

[11] https://www.spiked-online.com/2022/08/22/andrew-tate-free-speech-is-for-twats-too/; https://www.mediamatters.org/media/4015962.

knockoff show on social media. The teasers referred to the knockoff as either "NELK Love Island" or simply "*Love Island*." For example, the title of the clip below is "BTS Love Island: Nelk Edition."




In this context, "BTS" means "behind the scenes." Thus, the clip promoted what was purportedly a behind-the-scenes look at a new "edition" of *Love Island.*

41. On April 20, 2026, Defendants announced a schedule for the infringing program, with the first episode scheduled for release on April 27, 2026. Defendants later announced Episodes 2 and 3 as slated for May 11, 2026, and May 25, 2026, respectively.

42. The timing of the release was calculated to maximize Defendants' ability to trade on ITV Studios' goodwill in *Love Island*. *Love Island USA* airs one season per year, and each season lasts only six weeks. That six-week period and the weeks before and after it are when *Love Island* is most top of mind for its fans.

43. *Love Island USA* Season 8 was set to premiere on June 2, 2026,

meaning the announcement of NELK's fake "*Love Island*" came when the real *Love Island* premiere was only six weeks away, and Episode 3 of the infringing program was set to release approximately one week before the premiere of the real Season 8. This release schedule allowed Defendants to piggyback off, and take maximum advantage of, ITV's increasing advertising spend in that time period and to make it more plausible for ordinary viewers to believe that the infringing *Love Island* was an authorized spin-off to promote the real *Love Island*.

44. After the announcement of the release schedule, Defendants pushed more than 80 ads across NELK's official Instagram, TikTok, X, Facebook, and YouTube accounts promoting "*Love Island*" or "Nelk Love Island." Representative examples are pictured below.









45. Defendants also promoted the infringing *Love Island* on the April 30, 2026, episode of the Full Send Podcast titled "Nelk Boys Talk Behind the Scenes at Love Island and Erika Kirk Calling out Druski." The episode encouraged viewers to watch the infringing *Love Island* program.

**E. Defendants release the infringing *Love Island* program.**

46. Defendants released the first episode of the infringing *Love Island* on April 28, 2026 (a day later than originally scheduled), on their main YouTube channel (@nelkfilmz), which has more than 8.4 million subscribers. The first episode of the infringing *Love Island* was filled with ITV Studios' trademarks. For example, below is a comparison between ITV Studios' trademarks as used in the marketplace and selected images from the infringing *Love Island*.

| ***Love Island* Marks** | **The Infringing *Love Island*** |
| --- | --- |
|  |  |

| ***Love Island* Marks** | **The Infringing *Love Island*** |
| --- | --- |



















47. The set of the infringing *Love Island* was also filled with ITV Studios' trademarks, as seen in the examples below.






48. Defendants designed the content and look of their show to enhance the likelihood that viewers would believe that the infringing *Love Island* was affiliated with or approved by the makers of the real *Love Island*. Like the real *Love Island*, the infringing *Love Island* is set in a sun-drenched "Villa" decorated in a vivid, neon-tropical color scheme and built around the same signature spaces that fans recognize from the real show: a poolside deck lined with brightly colored pillows and towels; a communal bedroom with rows of side-by-side beds made up with crisp white sheets, where couples are filmed in night-vision sequences; a firepit where the Islanders gather in a semicircle for dramatic recoupling ceremonies; and a mirrored vanity "glam room" where the female contestants get ready.

| ***Love Island*** | **The Infringing *Love Island*** |
|---|---|
|  |   |

| ***Love Island*** | **The Infringing *Love Island*** |
|---|---|
|  |  |
|  |  |
|  |  |
|  |  |

| ***Love Island*** | **The Infringing *Love Island*** |
| --- | --- |
|  |  |
|  |  |
|  |   |
|  |   |

| ***Love Island*** | **The Infringing *Love Island*** |
| --- | --- |
|  |  |

49. The knockoff's host, Defendant Forgeard, and its contestants repeatedly referred to the show as "*Love Island*." Contestants were referred to as "Islanders." They also repeatedly used catchphrases that the relevant public strongly associates with *Love Island*, including variations of PULL YOU FOR A CHAT, HOT NEW BOMBSHELL, A NEW BOMBSHELL ENTERS THE VILLA, and I'VE GOT A TEXT.

50. Defendants intentionally replicated these elements to make the infringing *Love Island* appear as close as possible to the real one. Combined with the *Love Island* name, marks, and catchphrases, this copied look and feel increased the likelihood that viewers would believe the infringing *Love Island* was an authorized version of *Love Island*.

51. In addition, the infringing *Love Island* included George Vining, a former *Love Island USA* Season 6 contestant, as a contestant on the infringing *Love Island*. His inclusion served to trick viewers into believing that the infringing *Love Island* was affiliated with or authorized by the makers of the real *Love Island*.

52. Furthermore, the confessional booth used in the infringing *Love Island* appears to be an exact copy of the confessional booth used in the real *Love Island*, as pictured below.[12]

---

[12] ITV and its affiliates reserve the right to bring additional claims, including for copyright infringement and/or counterfeiting.

| ***Love Island*** | **The Infringing *Love Island*** |
|---|---|
|  |  |





53. As previewed in the casting call, the infringing *Love Island* closely followed the beats of the real *Love Island* and mimicked its overall structure and plot. The result was a low-quality, crude, and offensive knockoff of the original.

**F. Defendants succeed in causing confusion with *Love Island* and diluting the *Love Island* brand.**

54. The infringing version of *Love Island* was an extraordinary success for Defendants. According to a Wayback Machine capture of the @nelkfilmz YouTube page, Episode 1 reached more than 5 million views by May 10, 2026, just 12 *days* after its release, and more than three times as many views as the immediately preceding @nelkfilmz video received over a span of *seven months*.

55. The public's reaction to the infringing *Love Island* made clear that people were drawn to the infringing show believing it was somehow connected to or approved by the producers of the real *Love Island*. For example, one person who viewed Episode 1 of the infringing *Love Island* left a comment stating, "I clicked thinking this would be a new Love Island. Suddenly realizing this was the most unhinged thing I've seen in a WHILE." A YouTube channel called "London Reacts" discussed the infringing Episode 1 and commented, "what do you guys reckon? They actually paid Love Island to be able to use the name … or are they going to get sued in the end?"

56. Viewers also misattributed the infringing *Love Island*'s racist and misogynistic content to the producers of the real *Love Island*. For example, one

contestant in the infringing *Love Island* wore what appeared to be a Sikh turban. A turban has profound religious, spiritual, and cultural significance to the Sikh community. In the show, the contestant let the turban fall off his head and stated, "I don't care about [my] turban. I care about you." Earlier, Defendant Forgeard, the program's host and narrator, quipped, "that's gotta be the closest that turban's been to pussy in a while."

57. This sequence resulted in widespread offense among the Sikh community, and on May 1, 2026, a user on the X platform described this conduct as occurring on "American reality show love island," directly misattributing the offensive content to ITV.

58. The infringing show was filled with additional crude, misogynistic, sexually explicit, and racist content, all filmed with low production quality. The false association of *Love Island* with the disreputable Nelk enterprise irreparably harms ITV.

**G. Defendants profited from ITV Studios' trademarks.**

59. Defendants' purpose for stealing ITV Studios' trademarks was to enrich themselves by advertising and selling merchandise to people interested in the real *Love Island*.

60. Episode 1 of the infringing *Love Island* began with a nearly two-and-a-half-minute-long ad for PrizePicks, a fantasy sports gambling platform. Thus, anyone who clicked a link in advertising for the infringing *Love Island* episode expecting content from the real *Love Island* instead immediately saw an ad for PrizePicks. PrizePicks is a marketing partner of Defendant Shots Studios.

61. After the PrizePicks ad, the infringing *Love Island* continued and was filled with product placements for Defendants' products. In particular, the contestants were repeatedly depicted drinking Defendant Happy Dad's hard seltzer, and contestants were described as wearing Happy Dad merchandise.

62. The video's landing page, as depicted below, linked to six separate

product or service pages: Happy Dad (hard seltzer), Full Send (apparel, nicotine pouches, and merchandise), the Full Send Podcast, MoonPay (cryptocurrency), Ranger Cut (beef product), and PrizePicks (sports picks app). MoonPay is another marketing partner of Defendant Shots Studios.




63. Additionally, Defendants posted short clips of the infringing *Love Island* across YouTube, Instagram, TikTok, Facebook, and X. The clips used "*Love Island*" in their watermark, and some were labeled with the hashtag #loveisland. These ads directed viewers to purchase Defendants' and their partners' merchandise.

64. In short, Defendants used the massive goodwill behind the *Love Island* brand to draw viewers to Defendants' content and to show those viewers ads for Defendants' and their partners' merchandise. Defendants, who already generate tens of millions of dollars in revenue per year from their own content, simply stole ITV's brand and reputation to capture eyeballs and wallets to further enrich themselves.

**H. Defendants continue to profit from their infringement.**

65. ITV issued prompt DMCA notices after the infringing *Love Island* was published on April 28, 2026. On May 1, 2026, ITV sent a cease-and-desist letter to

Forgeard and Full Send. The same day, Forgeard posted a rant video on YouTube in which he stated, "ITV, stop being pussies, do not touch our YouTube video … if you do, it is fucking war."

66. Notably, this rant video continued to use ITV Studios' trademarks to promote Defendants' products in Defendants' misogynistic style. As shown below, the rant video prominently displays "*Love Island*" in a stylized font that appears in several of ITV Studios' trademark registrations and applications. Behind Forgeard, a viewer can see two cans of Happy Dad seltzer, with each can resting on a woman's largely exposed breasts.




67. After ITV sent the cease-and-desist letter, discussions continued between the parties, and Defendants made some cosmetic changes to the infringing *Love Island* program on May 6, 2026. On May 11, 2026, Defendants removed the

infringing program from YouTube and announced that Episode 2 was delayed.

68. Only 10 days later, however, on May 21, 2026, Defendants announced on Instagram that they would release Episode 2 of the infringing *Love Island* under the name "Nelk Presents: No Love in Miami" (the "Recut Program"). They released the Recut Program on May 25, 2026.

69. Defendants structured the content of the Recut Program and its promotion to ensure that they retained the large audience they gained by using ITV Studios' trademarks. The Recut Program consists of two "Chapters." Chapter 1 is a shortened version of the infringing *Love Island* episode released on April 28, 2026. Chapter 2 consists of previously unreleased footage that continues the events depicted in the original infringing *Love Island*. When introducing the Recut Program, Defendant Forgeard represented that it was not necessary for viewers to rewatch Chapter 1, since it comprised the same content as the original infringing episode, stating at the conclusion of the opening PrizePicks advertisement, "This video has episodes one and episodes two of No Love in Miami. If you've already seen episode one, episode two starts at about an hour into the video."

70. Defendants posted a comment on the video expressly tying "Nelk Presents: No Love in Miami" to the infringing *Love Island*. The comment bragged, "WE BACK .. THEY AINT STOPPING US" and announced that the Recut Program was composed of Episodes 1 and 2 of the infringing *Love Island.*




71. Viewers expressed their understanding that the Recut Program is a continuation of the infringing *Love Island* in the comments. One viewer stated, for example, "Hahahahahaha name change but we all know. Legendary shit dude." Another viewer stated, "Now everyone is familiar with the show and won't really

care what it's called anymore."

72. The reason that Defendants want to associate the Recut Program with the infringing *Love Island* is that they want to continue to profit from the audience they built using the goodwill in ITV Studios' trademarks and ITV's reputation and brand. Indeed, the Recut Program intensifies Defendants' commercial exploitation, with more pervasive integration of Happy Dad hard seltzer and a renewed PrizePicks advertisement and giveaway opening the video.

73. Since the release of the Recut Program, Defendants have continued to produce "Nelk Presents: No Love in Miami" and continue to profit from the audience they gained by misappropriating ITV's trademarks, branding, and reputation. Indeed, Episode 3 has received more than 2.3 million views, and the finale received more than 3 million views. All of the new content generated by Defendants continues to promote Defendants' and their partners' merchandise. Defendants have also announced their intention to release a Season 2 of "Nelk Presents: No Love in Miami." Defendants' efforts to profit from the audience they gained from their original misappropriation of the *Love Island* marks are ongoing.

**I. Each Defendant is responsible for infringement of ITV Studios' rights.**

74. **NELK USA, Inc.** On information and belief, NELK USA directly controls the @nelkfilmz YouTube account that published the infringing *Love Island* and was responsible for production of the infringing *Love Island*. In particular, after ITV sent a cease-and-desist letter to Full Send and Forgeard, NELK USA responded to ITV and indicated that editing of the infringing *Love Island* was performed at NELK USA's direction.

75. **Nelk, Inc.** On information and belief, Nelk, Inc. was also directly involved in and/or controlled the production of the infringing program. In particular, in a filing before the United States Patent and Trademark Office, Nelk, Inc. represented that it is the "popular creator, producer, and distributor of digital

and multimedia entertainment content, including an ongoing entertainment series featuring the NELK Boys, it distributes to its over 7 million YouTube subscribers, as well as a wide array of related goods and services, which are marketed and sold to consumers throughout the world." The infringing *Love Island* appeared on the main NELK Boys YouTube channel and was hosted by Defendant Forgeard, a founding member of the NELK Boys. In addition, the infringing *Love Island* used the *Love Island* trademark to advertise a wide array of goods and services from businesses within the NELK Boys universe.

76. **Kyle Forgeard.** Forgeard is the CEO, CFO, and Secretary of NELK USA. He directly participated in the creation of the infringing *Love Island*, including by serving as the show's host and describing the program as "*Love Island*" on air. He also personally promoted the infringing *Love Island* on Defendants' various social media channels.

77. **Full Send Corporation.** Full Send is run by its co-founder Forgeard and by brothers John and Sam Shahidi. In a podcast, John Shahidi stated that "90% of the business" side of the "Nelk empire" consists of him and his brother, with Forgeard leading the creative side. On information and belief, Full Send directly participated in the infringing conduct described in this Complaint. In particular, the business contact email for the @nelkfilmz YouTube channel lists the email address mgmt@fullsend.com, indicating that Full Send manages and operates the channel. Consistent with Full Send's management and operation of the channel, metadata from one of the online casting calls for the infringing *Love Island* episode indicates that Full Send was responsible for publishing the casting call. Moreover, the hosts of the Full Send Podcast directly encouraged their audience to watch the infringing *Love Island* program, expressly using the "*Love Island*" trademark in the podcast.

78. On information and belief, Full Send also induced Forgeard and NELK USA to commit the infringing acts described in this Complaint so that Defendants could profit from advertising and selling Full Send products in connection with the

*Love Island* mark. Indeed, several of the products advertised through the infringing *Love Island* program are Full Send products. And, illustrating how closely the Shahidis work with Forgeard, John Shahidi stated on a podcast that "I love everyone I work with and I love what I do. It doesn't feel like work. Even if we sold Happy Dad for $50 billion, Kyle [Forgeard], Steve [Deleonardis (one of the NELK Boys)], Sam [Shahidi], and I would probably buy neighboring islands and immediately start our next venture together."

79. **Happy Dad LLC.** According to an interview with John Shahidi, the Shahidi brothers, Forgeard, and others run Happy Dad. Happy Dad directly participated in the infringing activity. For example, as illustrated in paragraphs 65-66, *supra*, Forgeard's rant video advertised cans of Happy Dad seltzer using a stylized *Love Island* trademark.

80. On information and belief, Happy Dad also induced Forgeard and NELK USA to commit the infringing acts described in this Complaint so that it could profit from using the *Love Island* trademarks to generate interest in its hard seltzer products. In particular, Happy Dad's products were placed within the infringing *Love Island* program, and the advertising for the program encouraged viewers to buy Happy Dad products.

81. **Shots Studios, Inc.** Shots Studios is another entity owned (directly or indirectly) and/or controlled by the Shahidi brothers. It develops and produces podcasts and also works with advertisers or sponsors of podcasts. Shots Studios directly participated in the infringing conduct. For example, the infringing *Love Island* program began with what appears to be a scripted commercial for PrizePicks, a Shots Studios advertising partner, which, on information and belief, paid for the sponsorship placement. Within that scripted commercial, Forgeard states, as the PrizePicks commercial is concluding, "You ready for this Nelk Love Island video" and "I'm going to host Nelk Love Island." On information and belief, Shots Studios would have approved the script for one of its partner brands and therefore directly

used the "*Love Island*" trademark to promote its partner brand.

82. On information and belief, Shots Studios also induced Forgeard and NELK USA to commit the infringing acts described in this Complaint so that it could profit by using the *Love Island* trademark to attract attention to advertising for its partners' products. In particular, both PrizePicks and MoonPay are advertising partners of Shots Studios, and products for both of those partners were advertised on the infringing *Love Island*. In addition, Shots Studios manages the Full Send Podcast, which itself encouraged its viewers to watch the infringing *Love Island*.

**COUNT I**

**TRADEMARK INFRINGEMENT UNDER SECTION 32 OF THE LANHAM ACT (15 U.S.C. § 1114(1))**

**(BY ITV STUDIOS AGAINST ALL DEFENDANTS)**

83. All previous paragraphs are incorporated here.

84. ITV Studios owns valid trademark registrations in the word mark LOVE ISLAND and the graphic marks identified in paragraphs 29 and 30, *supra*.

85. By the acts described above, Defendants willfully used in commerce reproductions, counterfeits, copies, and colorable imitations of ITV Studios' registered marks in connection with the sale, offering for sale, distribution, and advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

86. By the acts described above, Defendants willfully applied reproductions, counterfeits, copies, and colorable imitations of ITV Studios' registered marks on advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive.

87. By the acts described above, Defendants Full Send, Happy Dad, and

Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to infringe ITV Studios' rights. Forgeard owns (directly or indirectly) and/or controls NELK USA, Full Send, and Happy Dad. Forgeard is also a close business partner of the Shahidi brothers, who own (directly or indirectly) and/or control Shots Studios, and the Shahidi brothers jointly own and/or control Full Send and Happy Dad with Forgeard. Full Send, Happy Dad, and Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to infringe the *Love Island* trademarks so that they could be used to increase the sales of Full Send products, Happy Dad products, and Shots Studios' advertising partners' products.

88. By the acts described above, Defendants Full Send, Happy Dad, and Shots Studios provided promotional support services to Defendants NELK USA, Nelk, Inc., and Forgeard in connection with the infringing program. The Defendants providing promotional support services knew that the other Defendants were infringing ITV Studios' trademarks when they provided support services. Based on the interlocking ownership and control among Defendants, Defendants Full Send, Happy Dad, and Shots Studios exercised direct control and monitoring over the infringing *Love Island* program and its associated advertising.

89. By virtue of the overlapping ownership, control, and participation in the infringing conduct by each Defendant, each Defendant is vicariously liable for the acts of the other Defendants because they were engaged in a partnership and exercised joint ownership or control over the infringing product.

90. ITV Studios has been and is likely to continue to be damaged by Defendants' infringing and unlawful acts in an amount to be determined at trial, and unless enjoined by this Court, is likely to suffer irreparable harm to its business, reputation, and goodwill, for which it has no adequate remedy at law.

91. ITV Studios accordingly seeks injunctive relief pursuant to 15 U.S.C. § 1116, as well as actual damages, Defendants' profits, and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), together with prejudgment and post-judgment

interest, and, because Defendants' infringing conduct has been and continues to be willful, an enhanced damages award pursuant to 15 U.S.C. § 1117(a).

**COUNT II**

**FEDERAL UNFAIR COMPETITION UNDER SECTION 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))**

**(BY ALL PLAINTIFFS AGAINST ALL DEFENDANTS)**

92. All previous paragraphs are incorporated here.

93. By the acts described above, Defendants used words, terms, names, symbols, devices, and combinations thereof, namely, the trademarks reflected in ITV Studios' trademark registrations and applications described *supra* and common-law marks, branding, and other indicia associated with both ITV entities, in connection with goods and services.

94. Defendants' uses are likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of Defendants with ITV and as to the sponsorship or approval of Defendants' goods, services, and commercial activities.

95. By the acts described above, Defendants Full Send, Happy Dad, and Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to infringe ITV's rights. Forgeard owns (directly or indirectly) and/or controls NELK USA, Full Send, and Happy Dad. Forgeard is also a close business partner of the Shahidi brothers, who own (directly or indirectly) and/or control Shots Studios, and the Shahidi brothers jointly own and/or control Full Send and Happy Dad with Forgeard. Full Send, Happy Dad, and Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to infringe the *Love Island* trademarks so that they could be used to increase the sales of Full Send products, Happy Dad products, and Shots Studios' advertising partners' products.

96. By the acts described above, Defendants Full Send, Happy Dad, and Shots Studios provided promotional support services to Defendants NELK USA,

Nelk, Inc., and Forgeard in connection with the infringing program. The Defendants providing promotional support services knew that the other Defendants were infringing ITV Studios' trademarks when they provided support services. Based on the interlocking ownership and control among Defendants, Defendants Full Send, Happy Dad, and Shots Studios exercised direct control and monitoring over the infringing *Love Island* program and its associated advertising.

97. By virtue of the overlapping ownership, control, and participation in the infringing conduct by each Defendant, each Defendant is vicariously liable for the acts of the other Defendants because they were engaged in a partnership and exercised joint ownership or control over the infringing product.

98. Defendants' conduct is causing immediate and irreparable harm and injury to ITV, and to their goodwill and reputation, for which they have no adequate remedy at law, and will continue to damage ITV and confuse the public unless enjoined by this Court. Plaintiffs accordingly seek injunctive relief pursuant to 15 U.S.C. § 1116, as well as actual damages, Defendants' profits, and their reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), together with prejudgment and post-judgment interest, and, because Defendants' infringing conduct has been and continues to be willful, an enhanced damages award pursuant to 15 U.S.C. § 1117(a).

## COUNT III

## FEDERAL DILUTION UNDER SECTION 43(c) OF THE LANHAM ACT (15 U.S.C. § 1125(c))

## (BY ITV STUDIOS AGAINST ALL DEFENDANTS)

99. All previous paragraphs are incorporated here.

100. The LOVE ISLAND mark is famous in the United States.

101. By the acts described above, Defendants impaired the distinctiveness of the LOVE ISLAND mark and willfully intended to trade on the recognition of the LOVE ISLAND mark.

102. By the acts described above, Defendants harmed and willfully intended to harm the reputation of the LOVE ISLAND mark.

103. By the acts described above, Defendants Full Send, Happy Dad, and Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to dilute ITV Studios' rights. Forgeard owns (directly or indirectly) and/or controls NELK USA, Full Send, and Happy Dad. Forgeard is also a close business partner of the Shahidi brothers, who own (directly or indirectly) and/or control Shots Studios, and the Shahidi brothers jointly own and/or control Full Send and Happy Dad with Forgeard. Full Send, Happy Dad, and Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to dilute the *Love Island* trademarks so that they could be used to increase the sales of Full Send products, Happy Dad products, and Shots Studios' advertising partners' products.

104. By the acts described above, Defendants Full Send, Happy Dad, and Shots Studios provided promotional support services to Defendants NELK USA, Nelk, Inc., and Forgeard in connection with the infringing program. The Defendants providing advertising support services knew that the other Defendants were diluting ITV Studios' trademarks when they provided support services. Based on the interlocking ownership and control among Defendants, Defendants Full Send, Happy Dad, and Shots Studios exercised direct control and monitoring over the infringing *Love Island* program and its associated advertising.

105. By virtue of the overlapping ownership, control, and participation in the infringing conduct by each Defendant, each Defendant is vicariously liable for the acts of the other Defendants because they were engaged in a partnership and exercised joint ownership or control over the infringing product.

106. Defendants' conduct is causing immediate and irreparable harm and injury to ITV Studios, and to its goodwill and reputation, for which it has no adequate remedy at law, and will continue to damage ITV Studios and confuse the public unless enjoined by this Court. ITV Studios accordingly seeks injunctive

relief pursuant to 15 U.S.C. § 1116, as well as actual damages and Defendants' profits and its reasonable attorneys' fees pursuant to 15 U.S.C. § 1117(a), together with prejudgment and post-judgment interest, and, because Defendants' infringing conduct has been and continues to be willful, an enhanced damages award pursuant to 15 U.S.C. § 1117(a).

**COUNT IV**

**DILUTION UNDER CALIFORNIA LAW (CAL. BUS. & PROF. CODE § 14247)**

**(BY ITV STUDIOS AGAINST ALL DEFENDANTS)**

107. All previous paragraphs are incorporated here.

108. The LOVE ISLAND mark is famous in California.

109. By the acts described above, Defendants' use of the LOVE ISLAND mark is likely to cause dilution of the LOVE ISLAND mark, and Defendants willfully intended to cause such dilution.

110. By the acts described above, Defendants Full Send, Happy Dad, and Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to dilute ITV Studios' rights. Forgeard owns (directly or indirectly) and/or controls NELK USA, Full Send, and Happy Dad. Forgeard is also a close business partner of the Shahidi brothers, who own (directly or indirectly) and/or control Shots Studios, and the Shahidi brothers jointly own and/or control Full Send and Happy Dad with Forgeard. Full Send, Happy Dad, and Shots Studios intentionally induced NELK USA, Nelk, Inc., and Forgeard to dilute the *Love Island* trademarks so that they could be used to increase the sales of Full Send products, Happy Dad products, and Shots Studios' advertising partners' products.

111. By the acts described above, Defendants Full Send, Happy Dad, and Shots Studios provided promotional support services to Defendants NELK USA, Nelk, Inc., and Forgeard in connection with the infringing program. The Defendants

providing advertising support services knew that the other Defendants were diluting ITV Studios' trademarks when they provided support services. Based on the interlocking ownership and control among Defendants, Defendants Full Send, Happy Dad, and Shots Studios exercised direct control and monitoring over the infringing *Love Island* program and its associated advertising.

112. By virtue of the overlapping ownership, control, and participation in the infringing conduct by each Defendant, each Defendant is vicariously liable for the acts of the other Defendants because they were engaged in a partnership and exercised joint ownership or control over the infringing product.

113. ITV Studios accordingly seeks injunctive relief pursuant to Cal. Bus. & Prof. Code § 14247, and, because Defendants' conduct has been willful, the remedies set forth in Cal. Bus. & Prof. Code § 14250, including an award of up to three times Defendants' profits and up to three times ITV Studios' damages, together with prejudgment and post-judgment interest.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray for judgment against Defendants as follows:

**(a)** That Defendants and all those acting in concert with them, including their agents and servants, and all those on notice of this suit, be permanently enjoined from infringing or diluting ITV Studios' trademarks or engaging in activity that falsely associates Defendants with ITV;

**(b)** That the Court award ITV monetary damages in the form of Defendants' direct and indirect profits attributable to the infringement, Plaintiffs' actual damages, including a reasonable royalty or license fee, enhanced damages, treble damages, corrective advertising damages, costs, expenses, and prejudgment and post-judgment interest;

**(c)** That, pursuant to 15 U.S.C. § 1118, the Court order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in Defendants' possession bearing ITV Studios' registered marks, and all plates, molds, matrices,

and other means of making them, be delivered up and destroyed;

**(d)** That, pursuant to Cal. Bus. & Prof. Code §§ 14247 and 14250, because Defendants willfully intended to cause dilution of the LOVE ISLAND mark, the Court require Defendants to pay ITV Studios up to three times Defendants' profits and up to three times all damages suffered by ITV Studios, together with prejudgment and post-judgment interest;

**(e)** That the Court award Plaintiffs their reasonable attorneys' fees to the full extent provided for under the law; and

**(f)** That ITV be awarded all further relief as the Court may deem just and proper.

Dated: October 30, 2026

ARNOLD & PORTER KAYE SCHOLER LLP

By: *James S. Blackburn*
James S. Blackburn
Theresa M. House (*pro hac vice* forthcoming)
Oscar Ramallo
Sage R. Bitter

*Attorneys for Plaintiffs*

**DEMAND FOR JURY TRIAL**

Plaintiffs ITV Studios Limited and ITV America Inc. demand a trial by jury on all issues so triable.

Dated: October 30, 2026

ARNOLD & PORTER KAYE SCHOLER LLP

By: */s/ James S. Blackburn*
James S. Blackburn
Theresa M. House (*pro hac vice* forthcoming)
Oscar Ramallo
Sage R. Bitter

*Attorneys for Plaintiffs*